JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff    Northampton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Northampton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John R. Vivian, Jr., Esquire, 831 Lehigh Street, Easton, PA 18042
(610) 258-6625

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983

Brief description of cause:
Wrongful Death and Survival, Suicide Death by hanging of detainee Plaintiff.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
One Million Dollars

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
2/14/2019

SIGNATURE OF ATTORNEY OF RECORD
*SH.*

## FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

FILED FEB 19 2019

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __1522 Clearfield Road, Wind Gap, PA__

Address of Defendant: __369 Washington Street, Easton, PA 18042; Def PrimeCare: 3940 Locust Lane, Harrisbu__

Place of Accident, Incident or Transaction: __Northampton County Prison, 669 Washington Street, Easton, PA 18042__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __2/14/2019__     _(signature)_     __34459__
                           *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __John R. Vivian, Jr.__ , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __2/14/2019__     _(signature)_     __34459__
                           *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

FILED FEB 1 9 2019

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _1522 Clearfield Road, Wind Gap, PA_____

Address of Defendant: _669 Washington Street, Easton, PA 18042; Def PrimeCare: 3940 Locust Lane, Harrisb_

Place of Accident, Incident or Transaction: _Northampton County Prison, 669 Washington Street, Easton, PA 1804__

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐    No ☐
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☐    No ☐
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐    No ☐
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights    Yes ☐    No ☐
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☒ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _2/14/2019_____    _____    _34459_____
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☑ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _John R. Vivian, Jr._____, counsel of record *or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _2/14/2019_____    _____    _34459_____
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5 2018)*

FILED FEB 19 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Kyle L. Flyte, Adm. of the     :
Estate of Kyle A. Flyte,Dec'd  :
        v.              :
County of Northampton, et al., :
                     :

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (**X**)

| | | |
|---|---|---|
| 2/14/2019 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-258-6625 | 610-258-4875 | jrvivian@verizon.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FILED FEB 1 9 2019

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE L. FLYTE, Administratror of the | : | No. |
| Estate of KYLE A. FLYTE, Deceased, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF NORTHAMPTON, PRIMECARE | : | CIVIL ACTION |
| MEDICAL, INC., KISHOR KUMAR DEDANIA, | : | |
| M.D., and KISHOR KUMAR DEDANIA, | : | |
| INDIVIDUALLY AND JOINTLY, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff, Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte, Deceased

(hereinafter referred to as the Plaintiff), by and through his attorney, John R. Vivian, Jr., Esquire,

brings the following civil action Complaint against the Defendant County of Northampton

(hereinafter referred to as Defendant Northampton), PrimeCare Medical, Inc., (hereinafter

referred as Defendant PrimeCare) and Kishor Kumar Dedania, M.D., (hereinafter referred to as

Defendant Dedandia), Individually and Jointly and respectfully avers as follows:

### **JURISDICTION**

1.      This Court has Jurisdiction over this matter as Plaintiff's claims arise under 42

U.S.C. §1983.  Jurisdiction is further invoked pursuant to 28 U.S.C., §1331 as the matter

involves federal questions.  The matter in controversy exceeds the sum or value of One Hundred

Fifty Thousand ($150,000.00) Dollars exclusive of interest and costs.

## **VENUE**

2.      Venue is proper in this Court pursuant to 28 U.S.C., §1391 (b)(2) because the events forming the basis of Plaintiff's claim occurred within the confines of the United States District Court for the Eastern District of Pennsylvania, having occurred on the premises of Defendant Northampton's Correctional Facility, later resulting in the direct death of the Plaintiff's decedent.

## **NATURE OF CAUSE OF ACTION**

3.      This is an action for damages and other relief arising from the death of Kyle A. Flyte, who was pronounced on March 13, 2017, at approximately 3:00 p.m., by Scott M. Grim, Lehigh County Coroner, with the official immediate cause of death being "hanging", which is believed to have occurred within the confines of Defendant Northampton's Correctional Facility on March 8, 2017 at approximately 12:25 p.m., while he was being held in the BHU Unit at said facility. This lawsuit is brought under 42 U.S.C. §1983, the constitution of the Commonwealth of Pennsylvania, and the various laws of the Commonwealth of Pennsylvania.

## **PARTIES**

4.      Plaintiff, Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte, Deceased, is an adult individual and residing at 1522 Clearfield Road, Wind Gap, Northampton County, Commonwealth of Pennsylvania. Plaintiff was issued Letters of Administration by Gina X. Gibbs, Register of Wills, on the 25th day of April 2017, appointing him and his now deceased

2

ex-wife as Administrators and Personal Representatives of the Estate of his deceased son, Kyle A. Flyte.

5.    Defendant, County of Northampton is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principle place of business at 669 Washington Street, City of Easton, County of Northampton, Commonwealth of Pennsylvania.

6.    Defendant, County of Northampton operates, manages, directs, controls and promulgates policy for the activities and the operation of Northampton County Prison (hereinafter referred to as NCP).

7.    Defendant, PrimeCare Medical, Inc., (hereinafter referred to as PrimeCare) is a for-profit corporation organized under Pennsylvania law; with a principal place of business at 3940 Locust Lane, Harrisburg, County of Dauphin, Commonwealth of Pennsylvania 17109, which at all times mentioned herein provided medical services for inmates such as the decedent through contract with the Defendant, County of Northampton and/or related agencies. At all times mentioned herein Defendant PrimeCare, provided medical services for inmates such as the decedent through contract with the Defendant, County of Northampton and/or related agencies, as well as NCP. At all times mentioned herein, PrimeCare was and remained responsible for all medical and mental health treatment and evaluation of inmates, including all pre-incarceration and/or incarcerated inmates in NCP including Plaintiff's decedent, Kyle A. Flyte.

8.    Defendant, Dedania is a Board Certified Psychiatrist, who at all times herein rendered psychiatric care to the Plaintiff's decedent, Kyle A. Flyte, during his incarceration from March 5, 2017 through March 8, 2017 at NCP. The Defendant, Dedania, maintained offices for

3

the practice of psychiatry at 2604 Schoenersville Road, City of Bethlehem, Commonwealth of Pennsylvania, believed to be the campus of LVPG-Muhlenberg Mental Health Clinic and is believed to be the agent, servant and employee of Defendant PrimeCare.

## FACTUAL BACKGROUND ALLEGATIONS COMMON TO ALL COUNTS

9. On or about March 5, 2017, at approximately 2100 hours, Plaintiff's decedent Kyle A. Flyte was booked into Defendant Northampton's NCP by C.O. Karl Case.

10. It is believed and therefore averred that following decedent's process into NCP he was placed on a Level II Suicide Watch on March 6, 2017, pursuant to the observations of C.O. Matthew Sifers, pursuant to "Policy 17:04".

11. On March 7, 2017, Plaintiff's decedent, Kyle A. Flyte, was seen for an unknown period of time by Defendant Dedania, whereupon he discontinued Suicide Watch Level II and the order reflecting same contains no documentation of time for the entry of that order or other length of the actual evaluation.

12. It is believed and therefore averred that Defendant Dedania either contemporaneously or following the evaluation of decedent, Kyle A. Flyte, entered a note into the record reflecting his assessment of the decedent as set forth above, said note being largely illegible. It is believed and therefore averred that according to CorEMR records, that Defendant Dedania discontinued Level II Suicide Watch at approximately 12:00 a.m., on March 7, 2017.

13. Plaintiff believes and therefore avers that the official Suicide Watch discontinuance was entered as an order at 3:29 p.m., according to CorEMR records of Defendant PrimeCare, said order allowing the release of Plaintiff's decedent, Kyle A. Flyte from the H-9 cell in which he was housed.

4

14.     Plaintiff believes and therefore avers that at sometime after the suicide watch discontinuance order was entered, that Plaintiff's Decedent attended a conference with Judge Roscioli via videoconference.

15.     Thereafter, at approximately 3:29 p.m., an Order was entered into the record, which read "holed 1520 (illegible signature) 3/7/17".

16.     Plaintiff believes and further avers this placing of the Plaintiff in the BHU (Behavioral Housing Unit) was based upon the decision of the Defendant Northampton's agents, servants and employees to punish the Plaintiff's decedent because he had not been honest about drug use prior to his entry into Defendant Northampton's prison system.

17.     It is believed and therefore averred that an incident as well as major conduct report was filed on the basis of a drug test for opioids being reported as positive.

18.     Plaintiff believes and therefore avers that the official's agents, servants and employees of Defendant Northampton ranked this disciplinary matter as major in nature; and therefore, made a determination to house the Plaintiff's decedent in a solitary confinement cell within the BHU.

19.     Plaintiff believes and avers that at the time of the determination to commit the Plaintiff's decedent to solitary confinement, that he had been mere hours from being discontinued on suicide watch, level II, and that further his circumstances regarding possibilities for bail, and his housing accommodations within the Defendant's facility had changed significantly from the time of discontinuance of suicide watch, level II.

20.     Plaintiff believes and therefore avers that there was no psychological examination of the Plaintiff's decedent prior to placing him in solitary confinement where he would be

isolated from other individuals and confined to his cell for twenty three (23) hours out of a twenty four (24) hour day.

21.     Upon his return from the video conference hearing as set forth above, Plaintiff's decedent was housed in Block BHU, cell 05, bed A, based upon a disciplinary segregation from the general population.

22.     Plaintiff believes and therefore avers that at the time of the decision by Defendant Northampton's agent, servant, officials and employees to place Plaintiff's decedent in disciplinary segregation in block BHU, that said agent, servant, officials and employees were aware of the recent discontinuance of suicide watch, level II, as well as the suicidal history of the Plaintiff's decedent, which was contained in records available to these individuals.

23.     Despite being aware of the suicidal history, the change in circumstances, the increased tendency for suicidal individuals to react unfavorably in isolation, that the decision to punish Plaintiff's decedent by essentially placing him in a form of solitary confinement was both ill advised and with deliberate indifference to the health, welfare and safety of Plaintiff's decedent.

24.     Plaintiff believes and therefore avers that the BHU cell 5 that Plaintiff's decedent was placed into was not suitable for an individual with suicidal tendencies from a physical standpoint of the cell's construction.

25.     Plaintiff believes and avers that the Defendant Northampton took absolutely no precautions concerning potential suicide by the Plaintiff's decedent including not having a proper mental examination conducted, notifying the appropriate physicians at Defendant Primecare, and

6

allowing the Defendant to possess numerous items which could be used to inflict harm upon himself in an actual suicide attempt or suicidal act.

26. Plaintiff believes and therefore avers that the Plaintiff's decedent was housed in the BHU cell 5 from approximately 3:29 p.m. on March 7, 2017 until his removal from that cell at sometime shortly after 10:37 a.m., on March 8, 2017.

27. On March 8, 2017, Plaintiff's decedent while in disciplinary segregation in BHU cell 5 between 10:00 a.m. and 10:26 a.m., fastened a ligature from his shoe strings, stretched a blanket across the bars of BHU cell 5 and proceeded to hang himself by the neck with this ligature, which was affixed to a tie-off point (one of many) present in this cell.

28. Plaintiff believes and therefore avers that the last security round conducted by the Defendant Northampton's servants, agents and employees prior to the hanging would have been conducted by CO Colarusso and PA Foley at approximately 10:00 a.m., on March 8, 2017.

29. Plaintiff believes and therefore avers that it was at the next security round made by CO Colarusso at approximately 10:26 a.m., that the next security round was made on the BHU tier at which time CO Colarusso discovered the Plaintiff's decedent hanging in his cell.

30. Plaintiff believes and therefore avers that there were video cameras trained upon the cell, which should have depicted the hanging blanket, but that this violation of rules was either not noted visually, nor responded to, if noticed, nor was any action taken to investigate why a blanket was stretched over BHU cell 5.

31. Plaintiff believes and therefore avers that there was never a complete psychological examination done of the Plaintiff's decedent at any time after his confinement in

7

Defendant Northampton's prison during his March 2017 incarceration by a licensed psychiatrist or psychologist.

32.     Plaintiff believes and therefore avers that there was not a full psychological assessment by a licensed psychiatrist or psychologist prior to placing the Plaintiff's decedent in disciplinary segregation following the video conference hearing with Judge Roscioli, a practice which Plaintiff believes is in contravention of proper standards, particularly given the Plaintiff's decedent history of suicide and psychological difficulties and believes that these actions were taken with deliberate indifference to the health, safety and welfare of Plaintiff's decedent.

33.     At sometime shortly after 10:30 a.m., Plaintiff's decedent was transported via ambulance following this suicide attempt to St. Luke's Hospital, Bethlehem Campus, where he was admitted and remained until March 13, 2017.

34.     Plaintiff's decedent was pronounced dead as a direct and proximate result of his suicidal hanging attempt while in Defendant Northampton's prison. Such pronouncement being made by the coroner on March 13, 2017 at 3:00 p.m..

## FIRST CAUSE OF ACTION
## COUNT I
## WRONGFUL DEATH
## 42 U.S.C. §1983

### Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte
### vs.
### Northampton County

35.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through thirty four of this Complaint, as though same were set forth fully and at length herein.

8

36. As a direct and proximate result and as a substantial factor of the Defendant Northampton's conduct committed under Color of State Law, by and through its agents, servants and employees at NCP, Defendant Northampton County deprived the Plaintiff's decedent of his rights, privileges and immunities under the laws of the constitution of the United States; to wit, his procedural and substantive due process rights under the 8th and 14th Amendments ensuring proper medical care and treatment including his psychiatric and mental health needs while incarcerated at NCP.

37. The above-averred violation of Plaintiff's decedent's rights under the 8th and 14th Amendments occurred as a result of the custom, policies and practices of Northampton County and its policy making officials.

38. The customs, policies and practices taken with deliberate indifference included, but were not limited to:

> a. maintaining a policy of placing inmates in segregation including inmates with a documented psychiatric history, without prior clearance by qualified mental health personnel;
>
> b. a failure to train NCP staff and corrections officers to detect, evaluate and/ or decrease the risk of suicide by highly vulnerable and/or mentally ill inmates;
>
> c. failure to promulgate or implement procedures for the prevention of inmate suicide;
>
> d. failure to promulgate or implement procedures for the timely and adequate evaluation of mentally ill inmates, and/or those with a high risk of suicide;
>
> e. endorsement and acceptance of PrimeCare's long-

9

standing pattern and practice of failing to provide
prompt and adequate medical evaluations of inmates
and their needs;

f.  failure to provide psychiatrists or other physicians
qualified to treat the needs of mentally ill inmates, or to
ameliorate the risk of suicide;

g.  failure to maintain adequate written policies and protocols
for the recognition and reduction of suicidal risk among
inmates;

h.  in arbitrarily and capriciously punishing inmates and
placing them in segregation isolation without taking
into account the mental capacity of the decedent to
withstand such treatment;

i.  in failing to ensure that observation watch rounds within the BHU were
conducted properly and in not observing the inmates properly while
conducting such rounds;

j.  in failing to recognize that the housing of Plaintiff's
decedent in a BHU cell where multiple tie off points for
hanging suicidal attempts were present was an improper
and highly dangerous environment for a prisoner who
was recently discontinued off suicide watch, level II
and who had a history of psychological and suicidal
history, which was recorded in the Plaintiff's decedent's
prison records and of which the Defendant had actual
knowledge;

k.  in failing to know and appreciate that the facilities at
NCP and the care available was wholly inappropriate
for inmates with psychological problems, who were or
had been recently actively suicidal, and in failing to
appreciate same and to transfer these individuals to a
facility which could provide proper care and security;

l.  in violating the Defendant's own policies with regard to
5.05 BHU post; and 5.27 central control center in terms

of failing to adhere to proper inmate observations;

    m.    in failing to follow the Defendant's own established policies with regard to special inmate management; and in particular, as it applies to policy 10.02 regarding BHU, Behavior Housing Unit; and,

    n.    in violating Defendant's own established procedures with regard to medical observation with regard to isolated or segregated inmates.

39.    These failures, comprising constitutionally defective policies occurred despite

NCP and their official's knowledge of the foregoing:

a.    that there generally existed a high risk of inmate suicide respecting Plaintiff's decedent;

b.    Plaintiff's decedent and/or other inmates in disciplinary segregation positions were particularly vulnerable to suicide behavior;

c.    the restraint and segregation of inmates at high risk of suicide, such as Plaintiff's decedent, greatly increases their risk and related grave harm;

d.    Primecare had a history of failing to provide timely, adequate, and thorough evaluations of inmates at NCP;

e.    failure to implement policies and procedures to address these concerns was highly likely to lead to constitutional violations of the rights of mentally ill inmates; and,

f.    in failing to protect the Plaintiff's decedent in terms of proper treatment, assessment, and appreciation of the change in his circumstances, following a recent discontinuance of suicide watch, level II, coupled with a history in his record of suicidal and emotional problems.

40.    Plaintiff's decedent's death and the associated harms and damages averred

hereinafter including pain and suffering prior to death, occurred as a result of these

constitutionally defective practices, policies and procedures, and the deliberate indifference to

11

Plaintiff's decedent's health, welfare and safety, all in violation of Plaintiff's Decedent's, Kyle A.

Flyte's rights under the 8th and 14th Amendments, and were a substantial factor in brining about

the harm and eventual death of Kyle A. Flyte, deceased.

41.    Plaintiff's decedent left surviving him the following persons entitled to recover

damages for his death:

    Kyle L. Flyte - father
    Brayden Flyte - son
    Carson Flyte - son

42.    By reason of the death of the decedent, his heirs have suffered extreme pecuniary

and financial losses, as well as the loss of society, companionship and guidance of the decedent,

Kyle A. Flyte, and including but not limited to medical expenses, funeral expenses and other

necessities.

43.    At the time of his death, the decedent, Kyle A. Flyte, was 21 years of age, having

been born on October 9, 1995, with a life expectancy of 57.3 years.

44.    The decedent did not bring an action for personal injury during his lifetime, and

no other action for the death of the decedent has been commenced against the Defendants.

45.    The Plaintiff is the natural father of the decedent and was duly appointed

Administratrix by the Register of Wills of Northampton County as set forth herein before, and

brings this action by virtue of the Act of 1885 P.L. 309, as amended, 42 Pa.C.S.A. §8301 and

Pa.R.C.P. §2202(a).

46.    Plaintiff believes and therefore avers that the actions of the Defendant

Northampton by and through NCP officials and employees in failing to provide Plaintiff's

decedent with necessary mental health treatment and under all the underlying facts set forth

heretofore was in deliberate indifference to his serious needs.

12

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## FIRST CAUSE OF ACTION
## COUNT II
## SURVIVAL
## 42 U.S.C. §1983

### Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte
### vs.
### Northampton County

47.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through forty six of this Complaint, as though same were set forth fully and at length herein.

48.     Plaintiff Kyle L. Flyte, brings this action on behalf of the Estate of Kyle A. Flyte, deceased, under and by virtue of the Probate Estate and Fiduciary Code, 20 Pa.C.S.A., §3373 and 42 Pa. C.S.A. §8302.

49.     Plaintiff Kyle L. Flyte, claims on behalf of the Estate, all damages suffered by the Estate by reason of the death of the decedent, Kyle A. Flyte, including but not limited to, the pain and suffering, fear, terror and tribulation, mental anguish and emotional distress, and the loss of earnings and earning capacity suffered by the decedent from the day of his death until such time into the future as he probably would have lived had he not dies as a result of and by reason of the actions of the Defendant NCP, as set forth heretofore in this Complaint.

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the

13

established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## SECOND CAUSE OF ACTION
### COUNT I
### WRONGFUL DEATH
### VIOLATION OF CIVIL RIGHTS UNDER THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**Northampton County**

50.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through forty nine of this Complaint, as though same were set forth fully and at length herein.

51.     Defendant County of Northampton, as set forth heretofore, committed deliberate indifferent acts against the Plaintiff's decedent. As a direct result of the Defendant's actions and as a substantial factor in bringing about the death of the Plaintiff's decedent, the Plaintiff's decedent was denied rights under the laws; and in particular, the Constitution of the Commonwealth of Pennsylvania.

52.     The conduct of the Defendant Northampton County by and through its agent, servant and employees was undertaken knowingly, intelligently, intentionally, negligently, recklessly and with malice and reckless disregard of the rights of the Plaintiff's decedent pursuant to the Constitution of the Commonwealth of Pennsylvania.

14

53.    As a result of the Defendant's conduct as set forth herein, Plaintiff's decedent's rights under, but not limited to, Article I, § 1 and §13 of the Constitution of the Commonwealth of Pennsylvania and the laws of the Commonwealth of Pennsylvania were violated as Plaintiff's decedent was subjected to cruel and unusual punishment by virtue of all of the improper conduct of the Defendant set forth heretofore, was denied procedural and substantive due process as set forth above, unlawfully and improperly detained in a facility, which was incapable of protecting him given his mental health and suicidal status.

54.    As a direct and proximate result of the Defendant's infliction of cruel and unusual punishment prohibited by the Constitution of the Commonwealth of Pennsylvania and as a substantial factor, Plaintiff's decedent suffered suicidal death by hanging and all the damages set forth heretofore.

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## SECOND CAUSE OF ACTION
## COUNT II
## SURVIVAL
## VIOLATION OF CIVIL RIGHTS UNDER THE CONSTITUTION OF THE COMMONWELATH OF PENNSYLVANIA

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**Northampton County**

15

55.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through fifty four of this Complaint, as though same were set forth fully and at length herein.

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## THIRD CAUSE OF ACTION
## COUNT I
## WRONGUL DEATH
## DANGEROUS CONDICITON OF REAL PROPERTY, 42 Pa., C.S.A. §8542(b)(3)

### Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte
### vs.
### Northampton County

56.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through fifty five of this Complaint, as though same were set forth fully and at length herein.

57.     Plaintiff brings this action against the Defendant County of Northampton.

58.     Plaintiff believes and therefore avers that the housing of the Plaintiff's decedent in block BHU, cell 5 in disciplinary segregation, which included various tie-off points for a suicidal individual was negligence in the care, custody or control of real property in the possession of a local agency; to wit, the cells were not designed nor meant to house individuals with suicidal tendencies particularly those subject to disciplinary segregation.

16

59. Plaintiff believes and therefore avers that the Defendant Northampton County had actual notice of the inadequacy of this real property (cells) to house detainees with suicidal tendencies as well as detainees with mental health difficulties; to wit, prior suicides by hanging in similarly equipped and designed cells within the holding facilities.

60. Plaintiff believes and therefore avers that it was imminently foreseeable that someone who was suicidal and/or evinced suicidal tendencies could utilize the bars, emblem tie-off points, and other exposed features of these standard prison cells to assist in self-actuated suicide, but chose to ignore that these facilities were unsuitable to house such detainees.

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## THIRD CAUSE OF ACTION
## COUNT II
## SURVIVAL
## DANGEROUS CONDICITON OF REAL PROPERTY, 42 Pa., C.S.A. §8542(b)(3)

### Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte
### vs.
### Northampton County

61. Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through sixty of this Complaint, as though same were set forth fully and at length herein.

62. Plaintiff brings this action against the Defendant County of Northampton.

17

63.    Plaintiff believes and therefore avers that the housing of the Plaintiff's decedent in block BHU, cell 5 in disciplinary segregation, which included various tie-off points for a suicidal individual was negligence in the care, custody or control of real property in the possession of local agency; to wit, the cells were not designed for nor meant to house individuals with suicidal tendencies particularly those subject to disciplinary segregation.

64.    Plaintiff believes and therefore avers that the Defendant Northampton County had actual notice of the inadequacy of this real property (cells) to house detainees with suicidal tendencies as well as detainees with mental health difficulties; to wit, prior suicides by hanging in similarly equipped and designed cells and holding facilities.

65.    Plaintiff believes and therefore avers that it was imminently foreseeable that someone who was suicidal and/or evinced suicidal tendencies could utilize the bars, emblem tie-off points, and other exposed features of these standard prison cells to assist in self-actuated suicide, but chose to ignore that these facilities were unsuitable to house such detainees.

WHEREFORE, Plaintiff demands judgment against the Defendant Northampton for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against the Defendant Northampton.

## **FOURTH CAUSE OF ACTION**
### **COUNT I**
### **WRONGFUL DEATH**
### **42 U.S.C. §1983**

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**PrimeCare Medical and Kishkumor Dedania, M.D.**

66. Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through sixty five of this Complaint, as though same were set forth fully and at length herein.

67. The conduct of PrimeCare through its agents, servants and employees, and including Defendants PrimeCare and Dedania, comprising violations of Kyle A. Flyte's rights under the 8th and 14th Amendments was caused by and consistent with practices, policies, and procedures deliberately implemented and maintained by PrimeCare.

68. Defendant's practices, policies and procedures including, but were not limited to:

a. failure to insure that mental health inmates are seen timely by a psychiatrist or other appropriate provider;

b. failure to implement proceeds for the evaluation and proper treatment and placement of mentally ill or suicidal inmates;

c. failure to maintain proper policies and procedures for housing of detainees such as the plaintiff's decedent into cells which were safe for use and did not contain tie-off points for potential hanging uses or ligatures;

d. failure to adequately train PrimeCare staff with respect to mental health evaluations, mental health treatment, and the recognition of suicide risk and the prevention of suicide;

e. failure to provide adequate staff for the mental health evaluation and mental health treatment of inmates;

f. failure to provide adequate psychiatric coverage;

g. failure to provide prompt mental health treatment;

h. failure to insure proper review of inmates' medical history;

i. failure to insure proper maintenance of "suicide watch" procedures;

j. in entrusting the "suicide watch" procedures in an unmonitored fashion to agents, servants and employees including the prison guards of NCP;

19

k. in relying upon the observations of the NCP prison guard observations of the mental condition, conduct and status of a suicidal detainee such as Plaintiff's decedent as a basis for evaluation and change in suicide levels and assessment;

l. failure to provide for and recommend transfer of Plaintiff's decedent to a facility where he could have received proper psychological care and treatment;

m. in failing to assure that a proper full psychological evaluation was done on Plaintiff's decedent prior to his placement into block BHU, cell 5 in disciplinary segregation where Defendants PrimeCare and Dedania had actual knowledge that the inmate would be isolated in a cell for 23 out of every 24 hours while housed therein;

n. in failing to establish a procedure whereby prisoners are promptly psychologically examined with a full psychological examination by a qualified psychiatrist or psychologist prior to allowing said inmates under the medical care of PrimeCare to be placed in such circumstances; and,

o. failure to have conducted a proper and thorough psychological evaluation by either a licensed psychologist or a licensed psychiatrist during the tenure of Plaintiff's decedent in the NCP.

69. The death of the Plaintiff's decedent, and the harm and damages related

thereto resulted from negligence and constitutional violations arising from PrimeCare's aforesaid

practices, policies, and procedures.

WHEREFORE, Plaintiff demands judgment against the Defendant for all compensatory

damages allowable under this cause of action, for a sum in excess of the established arbitration

limits, and further an appropriate award of attorneys fees and costs against both Defendants.

## **FOURTH CAUSE OF ACTION**
## **COUNT II**
## **SURVIVAL**
## **42 U.S.C. §1983**

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**PrimeCare Medical and Kishkumor Dedania, M.D.**

20

70.     Plaintiff incorporates herein by reference all the allegations contained in

paragraphs one through sixty nine of this Complaint, as though same were set forth fully and at

length herein.

WHEREFORE, Plaintiff demands judgment against the Defendants for all compensatory

damages allowable under this cause of action, for a sum in excess of the established arbitration

limits, and further an appropriate award of attorneys fees and costs against both Defendants.

## FIFTH CAUSE OF ACTION
## COUNT I
## WRONGFUL DEATH
## PROFESSIONAL NEGLIGENCE

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**PrimeCare Medical and Kishkumor Dedania, M.D.**

71.     Plaintiff incorporates herein by reference all the allegations contained in

paragraphs one through seventy of this Complaint, as though same were set forth fully and at

length herein.

72.     Kyle A. Flyte's death and the harm and damage related thereto, occurred as a

result of the negligent acts and omissions of PrimeCare and its agent, servant, and employee,

Kishkumor Dedania, M.D.

73.     The careless and negligent acts of the Defendants included, but were not limited

to:

a. Primecare's failure to train its employees and agents adequately with respect to
the evaluation and treatment of mentally ill inmates;

b. Primecare's failure to train its employees and agents with respect to the recognition
and reduction of suicide risk;

21

c. Primecare's failure to implement procedures for the timely and adequate mental health evaluations of inmates;

d. Primecare's failure to implement procedures to insure proper review of inmates medical history;

e. Primecare defendants' failure to recognize and properly treat the risk of suicide by Plaintiff's decedent;

f. Primecare defendants' failure to insure proper medical record review of Plaintiff's decedent;

g. Primecare defendants' failure to insure the Plaintiff's decedent consultation and treatment by a psychiatrist, despite the knowledge of the need to do so;

h. Primecare defendants' failure to coordinate surveillance of Plaintiff's decedent while in the segregated cell;

i. Primecare defendants' failure to obtain or review Plaintiff's decedent's medical records;

j. Primecare defendants' negligent placement of Plaintiff's decedent in a segregation "solitary cell" without an adequate mental health evaluation;

k. Primecare defendants' failure to communicate Plaintiff's Decedent's suicidal risk or its gravity to NCP staff and appropriate corrections officers;

l. Primecare defendants' failure to evaluate Plaintiff's Decedent need for medication, and their failure to recommend or prescribe appropriate medication;

m. Primecare defendants' failure to refer Plaintiff's decedent to appropriate professionals for proper evaluation and treatment;

n. Primecare defendants' failure to provide or recommend any mental health treatment whatsoever;

o. Primecare defendants' negligently and improperly downgrading the level of suicide watch within an inappropriate time period;

74.     The above averred negligence of Primecare and Dedania resulted in the death of

Kyle A. Flyte and the associated harms and damages averred heretofore.

22

WHEREFORE, Plaintiff demands judgment against the Defendants for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against both Defendants.

### FIFTH CAUSE OF ACTION
### COUNT II
### SURVIVAL
### PROFESSIONAL NEGLIGENCE

**Kyle L. Flyte, Administrator of the Estate of Kyle A. Flyte**
**vs.**
**PrimeCare Medical and Kishkumor Dedania, M.D.**

75.     Plaintiff incorporates herein by reference all the allegations contained in paragraphs one through seventy four of this Complaint, as though same were set forth fully and at length herein.

WHEREFORE, Plaintiff demands judgment against the Defendants for all compensatory damages allowable under this cause of action, for a sum in excess of the established arbitration limits, and further an appropriate award of attorneys fees and costs against both Defendants.

JOHN R. VIVIAN, JR.
I.D. #34459
831 Lehigh Street
Easton, PA 18042
(610) 258-6625
jrvivian@verizon.net

23

**COMMONWEALTH OF PENNSYLVANIA** )
) **SS: AFFIDAVIT**
**COUNTY OF NORTHAMPTON** )


**KYLE L. FLYTE, ADM.,** being duly sworn according to law, deposes and says

that the facts set forth in the foregoing **COMPLAINT** are true

and correct to the best of his/her knowledge, information and belief.


_____
**KYLE L. FLYTE, ADM., OF THE
ESTATE OF KYLE A. FLYTE**


Sworn to and subscribed before me

this 14th day of February 2019.


_____
Notary Public

**COMMONWEALTH OF PENNSYLVANIA**
**NOTARIAL SEAL**
**STELLA D. HAMMERSTONE, Notary Public**
**Easton City, Northampton County**
**My Commission Expires June 30, 2021**